**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AMANDA SADOWSKI, | )<br>)<br>) Judge Harry D. Leinenweber |
| Plaintiff, | )<br>) |
| vs. | ) Magistrate Judge Sheila Finnegan<br>)<br>) |
| TUCKPOINTERS LOCAL 52 HEALTH & WELFARE TRUST, et al. | ) Case No. 1:16-cv-11014<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff Amanda Sadowski ("Sadowski") seeks payment of medical benefits under the terms of the Tuckpointers Local 52 Health & Welfare Trust ("the Plan") pursuant to 29 U.S.C. § 1132(a)(1)(B). This case revolves around the Plan's decision to deny numerous medical bills Sadowski's health care providers submitted for payment because the Plan and its fiduciaries misinterpreted and misapplied a benefit exclusion for charges related to the "same injury" that was the subject of a third-party tort action and subrogation claim. Sadowski was in a car accident in April 2013, the injuries from which necessitated implantation of a spinal cord stimulator. Two years after implanting that spinal cord stimulator, Sadowski slipped and fell on a steep flight of stairs in her home, directly causing an open wound that developed a bacterial infection that spread to the base of the spinal cord stimulator. Doctors had to remove the device to prevent the infection from spreading to Sadowski's spine. The Plan denied all claims for these expenses, asserting they resulted from the car accident years earlier—rather than the fall down the stairs and infection—and should have been included in future medical expenses from the settlement of that claim. The denial defies the plain language of the Plan's exclusion, all legal principles of

1

proximate causation and certainty of damages, and all evidence in the record showing Sadowski's fall down the stairs caused the expenses in question.

## FACTUAL SUMMARY

The Plan is an employee welfare benefit plan as that term is defined in 29 U.S.C. § 1002(2). (ECF #16, Plaintiff's Rule 56.1 Statement of Facts ("PSOF") ¶ 2; ECF #7, Answer, ¶ 5; ECF #14, AR0853[1]). The Plan provides medical benefits to its eligible participants and their dependent beneficiaries, such as Sadowski. (PSOF ¶ 1;ECF #7, Answer, ¶¶ 4, 12–13). Sadowski has suffered from chronic regional pain syndrome ("CRPS") since 2001. (PSOF ¶ 7; AR0272). On April 30, 2013, she was involved in a car accident that exacerbated her CRPS and caused other injuries. (PSOF ¶ 8–9; AR0295, 318). After conservative treatment modalities were unsuccessful, Sadowski's physicians implanted a spinal cord stimulator into her back. (PSOF ¶¶ 10–13; AR0268–74, 277–88, 314, 316). The Plan advanced medical expenses caused by this car accident, and was entitled to reimbursement upon a recovery in the personal injury action. (PSOF ¶ 15, 20; AR0159–60, 603). The tortfeasor had a limited insurance policy, and Sadowski and the Plan agreed the Plan would accept 2/3 of the expended medical expenses in full satisfaction of its lien. (PSOF ¶¶ 17, 21; AR0006, 597–99).

With respect to advanced medical expenses and reimbursement, Plan § 12.3 states "Once a settlement is reached, additional bills cannot be submitted with respect to the <u>same injury</u>." (PSOF ¶ 15; AR0921 (emphasis added)). The Summary Plan Description, however, is silent about this exclusion. (PSOF ¶ 79; AR1016). Plan representatives repeatedly interpreted this provision as excluding only expenses that were "attributed to" the car accident, and that could be recoverable in a settlement or judgment regarding that accident. (PSOF ¶ 16, 18; AR0292, 301).

---

[1] The parties filed the Administrative Record at ECF #14. Citations to the Administrative Record will hereinafter be to "ARxxxx."

On August 23, 2015, Sadowski slipped and fell on the stairs in her home, scraping her left buttock. (PSOF ¶¶ 23–25; AR0184–85, 223, 249). Over the next several weeks, the scrape became infected and developed cellulitis—a bacterial infection that enters under the skin through an open wound—that spread to the battery pocket of the spinal cord stimulator. (PSOF ¶¶ 26–35; AR0186, 226–34). A picture of the wound Sadowski sent to doctors on September 15, 2015 is in the record. (PSOF ¶ 35 & Ex. 2; AR0186). Sadowski's physician determined that the device required removal because the infection could travel from the battery up the electrical leads and spread to Sadowski's spinal cord. (PSOF ¶ 42; AR0240). Dr. Timothy Lubenow performed the removal surgery on September 28, 2015. (PSOF ¶ 45; AR0242–43, 330–31). Sadowski suffered a seizure following that surgery and was transported to Rush University Medical Center's ("Rush") emergency department, where she remained in the intensive care unit for five days. (PSOF ¶¶ 46–49; AR0242–43, 344–52). As a direct result of this August 23, 2015 fall down the stairs, Sadowski incurred charges for medical expenses and related services in excess of $73,000 that her medical providers submitted to the Fund for payment. (PSOF ¶ 50; AR0121–55, 161).

In October 2015, the Plan began denying claims from the surgery and hospital stay on the basis that the expenses appeared to be related to the April 2013 car accident (PSOF ¶¶ 51, 56; AR0323, 431), but noting all expenses would be covered by the Plan if the car accident never occurred because of Sadowski's long-standing Complex Regional Pain Syndrome. (PSOF ¶ 53; AR0275). After the first several denials, Dr. Lubenow sent the Plan a letter expressly explaining Sadowski's fall down the stairs caused the wound and infection and required surgery (PSOF ¶ 58; AR0185), and records from the hospital stay revealed disclosure of the recent "minor trauma" causing the infection. (PSOF ¶ 48; AR0349). The Plan apparently did not read

3

Dr. Lubenow's explanation of the cause, and continued asserting the infection and required surgery were attributed to the car accident years earlier. (PSOF ¶ 59; AR0328).

Sadowski appealed the denials, emphasizing that her August 23, 2015 fall down the stairs caused a scrape that became infected, attaching images of the stairs and the wound/infection, and copious corroborating personal journal entries describing the fall and progression of the infection in detail. (PSOF ¶ 23–45, 60; AR0175–82, 184, 186, 223–43, 249, 426). The Plan engaged a medical consultant and specifically asked whether these expenses at issue would have been included in future medical expenses from the April 2013 car accident, consistent with the Plan's prior interpretation of the Plan's exclusion for future expenses due to the "same injury." (PSOF ¶ 16, 18, 62; AR0167, 292, 301). The consultant declined to answer that question, as it involves a legal conclusion (PSOF ¶ 64; AR0174), but explained from a clinical perspective that the stimulator was explanted due to the infection resulting from the fall down the stairs more than 2 years after the car accident. (PSOF ¶ 66; AR0170). He also explained the expenses were related to the spinal cord stimulator, and thus related to the 2013 car accident, because if Sadowski never had the stimulator implanted, it would not have needed to be explanted. (PSOF ¶¶ 67–68; AR0170).

The Plan's administrative manager, Terri Rocco, prepared a summary of the appeal and recommendation for the Plan's trustees. (PSOF ¶ 69; AR0161–63). In so doing, however, she failed to advise the trustees that an August 2015 fall down the stairs caused the injury—an open wound that became infected—and necessitated the surgery. (PSOF ¶¶ 70–74; AR0161–63). She also failed to tell the trustees Dr. Lubenow explained the surgery was due to the fall down the stairs causing an injury that became infected, or that her own medical consultant confirmed the fall down the stairs was the cause. (PSOF ¶¶ 71, 73–74; AR0161–63). She instead told the

trustees Sadowski's counsel (not Sadowski, her husband, and her surgeon) indicated there was a fall that caused the infection, and emphasized "*there was no medical treatment rendered for the alleged fall*," effectively mischaracterizing the medical evidence, including Dr. Lubenow's letter describing the cause of Sadowski's injury. (PSOF ¶¶ 72–73; AR0162).

Deceived by the administrative manager's misrepresentations, the trustees unsurprisingly upheld the administrative manager's earlier denial, and the administrative manager herself wrote the final decision, noting: "Because the charges were *directly related* to the implant (covered by a settled third party claim) The Claims associated with the removal of the implant and subsequent hospitalization, were denied according to Section 12.3 of the plan." (PSOF ¶ 76–78; AR0156–58). The decision does not acknowledge (1) Sadowski's journal entries describing the fall down the stairs causing a scrape that developed an infection (PSOF ¶¶ 23–45; AR0223–43), (2) Sadowski's husband's statement at Rush hospital that "minor trauma" (not a car accident) caused the injury leading to the infection (PSOF ¶ 48; AR0349), (3) Dr. Lubenow's explanation that the fall down the stairs caused the injury and resulting infection (PSOF ¶ 58; AR0185), or (4) the Plan's own medical consultant confirming the fall down the stairs caused the infection and required surgery (PSOF ¶ 66; AR0170). (PSOF ¶¶ 77–78; AR0156–58).

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

5

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is generally reviewed *de novo* unless the plan document gives the plan administrator discretionary authority to determine eligibility for benefits or to interpret terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989). Where the plan grants such discretion, the court applies the abuse of discretion standard of review.[2] *Id.* at 111. Nonetheless, "[d]eferential review is not no review," and "deference need not be abject." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

Under deferential review, a benefit denial should be overturned where "there is an absence of reasoning in the record to support it." *Hacket v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774–75 (7th Cir. 2003). A Court should overturn a decision where there is no "rational support in the record" or the administrator failed to consider "the relevant factors that encompass the important aspects of the problem." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). The administrator "must articulate a rational connection between the facts found, the issue to be decided, and the choice made." *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 828 (7th Cir. 2004). "[T]he administrator must weigh the evidence for and against, and 'within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review.'" *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695

---

[2] Courts interchangeably refer to this as "abuse of discretion" or "arbitrary and capricious," but for ERISA purposes, they are the same. *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009).

(7th Cir. 1992). An interpretation that controverts the unambiguous terms of a plan is an abuse of discretion. *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996)); *Filipowicz v. Am. Stores Benefit Plans Comm.,* 56 F.3d 807, 814 (7th Cir. 1995). Under these standards, the Plan abused its discretion in denying Sadowski's claim.

## ARGUMENT

Sadowski is entitled to Plan benefits with respect to the denied claims. Although a plan participant bears the burden of proving that he or she is entitled to plan benefits, the plan bears the burden of proving an exclusion applies. *Yasko v. Reliance Standard Life Ins. Co.*, 53 F. Supp. 3d 1059, 1069 (N.D. Ill. 2014) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010)); *Zaccone v. Standard Life Ins. Co.,* 36 F. Supp. 3d 781, 783 (N.D. Ill. 2014) (explaining plan has the burden of proving an exclusion applies); *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002) (explaining "ERISA places the burden of proving an exclusion from coverage . . . the plan administrator."); *Collins v. Unum Life Ins. Co. of Am.*, No. 16-1636, 2017 U.S. App. LEXIS 12060, at *3 (4th Cir. July 6, 2017) ("Plan administrators bear the burden of proving an exclusion applies."). Moreover, exclusions in plans must be narrowly construed such that if there is a covered reason for incurring a claim, the exclusion will not bar the claim. *See Fought v. UNUM Life Ins. Co. of Am.*, 357 F.3d 1173, 1189 (2004) (holding exclusions must be narrowly construed); *Okuno v. Reliance Standard. Life Ins. Co.*, 836 F.3d 600, 609 (6th Cir. 2016) (collecting cases and holding that a disability plan administrator arbitrarily and capriciously applied a mental nervous limitation to a claimant's disability benefits when the claimant's physical ailments were themselves sufficient to support a finding of disability).

7

The relevant portion of Plan § 12.3 (PSOF ¶ 15; AR0160) is an exclusion because it excepts certain events or conditions—claims related to the "same injury" as a settled third-party liability claim—from coverage under the Plan. *See Exclusion,* Black's Law Dictionary Free Online Legal Dictionary. (2d Ed.), http://thelawdictionary.org/exclusion/ ("Something not covered, as in specific damage not covered in an auto policy."). Thus, the Plan thus bears the burden of proving the expenses at issue were caused by the "same injury" (i.e., the April 30, 2013 car accident) rather than the August 23, 2015 fall down the stairs. The Plan cannot satisfy this burden.

First, the plain language of Plan § 12.3 is unambiguous in that it only excludes medical expenses for the "same injury" (i.e., the 2013 car accident), and not the 2015 fall down the stairs. Second, the Plan totally failed to address every piece of evidence (including its own medical consultant's opinion) showing the fall down the stairs, rather than the car accident, caused the infection and required surgery. Finally, even if the term "same injury" were ambiguous it would be an abuse of discretion to interpret the term broader than its common meaning after the Plan repeatedly indicated the exclusion only concerns damages directly caused by the car accident that could have been included in a future medical expense damage award, and these expenses could not have been recovered as future medical expenses of the car accident.

### A. Plan § 12.3 Unambiguously Does Not Apply to Expenses Resulting from the August 2015 Fall Because It Is Not the Same Injury as the April 2013 Car Accident.

Applying Plan § 12.3 to the denied claims was an abuse of discretion because the Plan violated the plain and ordinary meaning of Plan terms to determine the expenses at issue were attributable to the 2013 car accident instead of the August 2015 fall down the stairs. "In interpreting the language of an ERISA-governed plan, we apply the federal common law rules of contract interpretation." *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich.,*

*Inc.*, 674 F.3d 630, 634 (7th Cir. 2012). Plan language must be given its "plain and ordinary meaning." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). The Plan terms must be interpreted "in any ordinary and popular sense, as they would be understood by a person of average intelligence and experience." *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010). The Court must construe the terms according to their "common understanding as revealed in common speech." *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1054 (7th Cir. 1991); *accord Swaback*, 103 F.3d at 540–42 (holding administrator arbitrary and capricious for construing plan terms in a way that deviate from common understanding); *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 829 (7th Cir. 2004) (holding administrator arbitrary and capricious for interpreting the word "scope" contrary to common understanding). "Contract language is ambiguous if it is susceptible to more than one reasonable interpretation. Where the terms of a plan document are unambiguous, we will not look beyond its 'four corners' in interpreting its meaning." *Cent. States*, 674 F.3d at 635.

The operative sentence of Plan § 12.3 states: "Once a settlement is reached, additional bills cannot be submitted with respect to the <u>same injury</u>." (PSOF ¶ 15; AR0921). The term "same injury" is unambiguous. The word "same" means: "resembling in every relevant respect;" "conforming in every respect;" "being one without addition, change, or discontinuance"; and "corresponding so closely as to be indistinguishable." *Same.* <u>Merriam-Webster Online Dictionary</u>. https://www.merriam-webster.com/dictionary/same. "Injury" means "any harm or damage done to another, either in his person, rights, reputation, or property." *Injury*, <u>Black's Law Dictionary</u>. (Free Online 2d Ed.), http://thelawdictionary.org/injury.

Common understanding compels the conclusion that the April 30, 2013 car accident was one injury caused by a third-party tortfeasor, and the August 23, 2015 fall down the stairs,

9

scraping her buttock (which became infected), was a distinct injury. A person of average intelligence might expect had Sadowski's condition not improved and she needed ongoing medical care, that would result from the "same injury." But no person of average intelligence in Amanda Sadowski's shoes would understand that every conceivable minor slip or fall (such as by stepping on a child's toy or because of a loose rug) that in any way impacts her spinal cord stimulator is the "same injury" as a major car accident years earlier.

The record unequivocally shows that the denied claims do not arise out of the "same injury" (the 2013 car accident), and instead arose from the August 23, 2015 fall down the stairs—a different injury. Sadowski extensively described the fall down the stairs resulting in an open wound and infection in a contemporaneous journal entry. (PSOF ¶¶ 23–45; AR0223–43). Her husband told the admitting personnel at Rush hospital about the fall and resulting infection. (PSOF¶ 48; AR0349). Dr. Lubenow explained that the fall down the stairs caused the wound and infection. (PSOF ¶ 58; AR0185). Even the Plan's own medical consultant wrote "She fell at home . . and developed an infection and cellulitis in the left buttock overlying the SCS generator." (PSOF ¶ 66; AR0170). There is no evidence in the record to the contrary with which the Plan can satisfy <u>its burden</u> to show the exclusion applies.

> **B. The Plan Administrator and Trustees Failed to Articulate A Connection Between the Facts Found and the Operative Language Under the Plan.**

The Plan's denial was an abuse of discretion because the administrator and trustees failed to apply the Plan language to the facts and determine whether the infection necessitating the surgery was due to the "same injury" as that suffered in the settled third party liability claim. The Plan must consider "the relevant factors that encompass the important aspects of the problem." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). It must also

"articulate a rational connection between the facts found, the issue to be decided, and the choice made." *Dabertin*, 373 F.3d at 828.

Plan § 12.3 excludes expenses if they are due to the "same injury" subject of a settled third-party tort. (PSOF ¶ 15; AR0921). The administrator and trustees did not once analyze whether Sadowski's fall down the stairs, resulting in an open wound that became infected, was the "same injury" as the April 30, 2013 car accident. The Plan merely considered whether there was any "relation" between removal of the spinal cord stimulator and the car accident and implantation of the spinal cord stimulator. (PSOF ¶¶ 51, 53, 54, 56, 58, 59, 62, 67, 68, 74, 78). But whether the expenses have any relation to the car accident or whether they have any relation to the spinal cord stimulator are not "the relevant factors that encompass the important aspects of the problem" and have no connection between the facts found and the issue to be decided because "related to" the spinal cord stimulator and resulting from the "same injury" are different questions. *Edwards*, 639 F.3d at 360; *Dabertin*, 373 F.3d at 828. The Plan's analysis cannot withstand even the most minimal of judicial review.

Additionally, the Plan's decision is an abuse of discretion because it ignored Dr. Lubenow's explanation that the August 2015 fall down the stairs caused the September 28, 2015 surgery and related complications. Plan administrators are not free to simply disregard the opinion of a treating physician out of hand. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). The administrator must provide a reasoned explanation for rejecting a treating physician's opinion. *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1088 (7th Cir. 2012) ("Selecting one opinion over another without a rational explanation can be described as arbitrary."); *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009). There is no evidence in the record that the Plan ever considered Dr. Lubenow's letter explaining

the August 2015 fall caused the infection and surgery. (PSOF ¶ 59, 73, 77; AR0156–58, 162, 328). The administrator and trustees simply disregarded it, and the final administrative denial did not even discuss it. (PSOF ¶ 77; AR0156–58). Where the Plan had no evidence to support its position and wholly disregarded all evidence in Sadowski's favor, the Plan could not have complied with its obligation to "weigh the evidence for and against," and articulate "the reasons for rejecting evidence," *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695 (7th Cir. 1992). Accordingly, any conclusion that the September 28, 2015 surgery was caused by the April 2013 car accident has no rational support in the record and cannot satisfy the Plan's burden.

**C. If Plan § 12.3 Is Ambiguous, the Administrator's and Trustees' Interpretation Was an Abuse of Discretion Because the Plan Established an Interpretation that Medical Expenses Must be Attributed to the 2013 Car Accident to Be Excluded, and All Record Evidence Showed They Were Attributed to the August 2015 Fall Down the Stairs.**

Even if the term "same injury" in Plan § 12.3 is ambiguous, the Plan's application of that term to deny Sadowski's claims was an abuse of discretion because it is inconsistent with the meaning set forth by the Plan in objective extrinsic evidence as reasonably understood by the parties. *See Matthews v. Sears Pension Plan*, 144 F.3d 461, 467–68 (7th Cir. 1998) (holding a court should look at objective extrinsic evidence to determine the intended meaning of an ambiguous term in a plan); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 818 (7th Cir. 2010) (holding the court can enforce the terms of the plan as reasonably understood by the parties, established by objective evidence). Plan § 12.3 states it excludes expenses "with respect to the same injury" after a settlement is reached. (PSOF ¶ 15; AR0921). Correspondence from the Plan to Sadowski indicated this would exclude payment of further medical expenses for the "injuries attributed to" the April 2013 car accident. (PSOF ¶¶ 16, 18). "Attributed to" means "resulting from a specified cause." Attribute, Oxford Dictionary,

12

https://en.oxforddictionaries.com/definition/attribute. These correspondence never stated all medical expenses ever incurred that bear any relationship to her spinal cord stimulator will be excluded (which is how the Plan applied the exclusion when claims from the fall down the stairs arose). Indeed, if the exclusion really were to be applied so broadly, one would expect disclosure of that in the Plan's summary plan description, though it does not. (PSOF ¶ 79; AR1016).[3] Every piece of evidence in the record explained the medical expenses at issue resulted from—or were "attributed to"—Sadowski's August 23, 2015 fall down the stairs, which left an open wound that developed an infection, spreading to the spinal cord stimulator battery, including Sadowski's description of the event, her husband's description to hospital personnel, Dr. Lubenow's opinion, and the Plan's medical consultant's explanation. (PSOF ¶ 23–45, 48, 58, 66; AR0185, 223–43, 349, 354).

The Plan attributes the September 28, 2015 surgery and related expenses to the April 30, 2013 car accident by applying a pure "but-for" causal analysis. (*See* PSOF ¶ 70; AR0354 (explaining if Sadowski never had the spinal cord stimulator in the first place, she would not have needed it removed later)). Applying the Plan terms in such a way, however, ignores principles of certainty of damages and proximate causation.

Medical expenses due to an August 23, 2015 fall down the stairs resulting in an infection would not have been recoverable damages from the April 30, 2013 car accident. Future damages must be more probable than not to be recoverable. *See De Pass v. United States*, 721 F.2d 203, 205 (7th Cir. 1983). There was nothing about Sadowski's 2013 car accident that would make anybody anticipate an open wound skin infection 28 months later that spreads to her spinal cord

---

[3] ERISA requires the summary plan description "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan" and describe "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a)–(b); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587 (7th Cir. 2000).

13

stimulator. After the car accident, and before the slip and fall, Sadowski's condition appeared to be better than her baseline before the accident. She was able to ride a horse, hike, climb a mountain, bike ride, and take a cross-country road trip without pain. (PSOF ¶ 22; AR0187–88, 192, 196–216, 222). In fact, some days she did not need to turn the stimulator on at all; she felt "fantastic," and "the best I have ever felt in many years." The Plan offered nothing to show these expenses were a probable result of the car accident.

Sadowski's injuries from the August 23, 2015 fall down the stairs also would not be recoverable as future medical expenses of the April 30, 2013 car accident because the car accident could not proximately or "legally" cause those injuries. "Legal cause is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Caletz v. Blackmon*, 476 F. Supp. 2d 946, 951 (N.D. Ill. 2007) (internal quotations and citations omitted). A subsequent act causing injury breaks the chain of legal causation unless the subsequent act was probable and foreseeable at the time of the first injury. *Roeseke v. Pryor*, 152 Ill. App. 3d 771, 779 (Ill. App. Ct. 1st Dist. 1987).

Sadowski's August 2015 fall down the stairs was an unforeseeable intervening cause for the removal of her spinal cord stimulator and related complications. Her situation is similar to the facts in *Jackson v. Wal-Mart Stores, Inc.,* 92 F. Supp. 2d 882 (W.D. Ark. 2000). The *Jackson* plaintiff underwent a cervical fusion at C5-6 and C6-7 in January 1995 for a preexisting back problem. *Id.* at 883. Then, in January 1996, he was injured in a work-related car accident that resulted in him undergoing an additional cervical fusion at C3-4 and C4-5. *Id*. at 884. He settled his worker's compensation claim and related third-party tort claim, and his health plan was reimbursed for medical expenses it advanced. *Id.* at 884–85. In October 1998, he learned that

two of the screws inserted at C5 had failed and underwent an additional surgery for which his health plan denied coverage because the plan found that the 1998 surgery was related to his settled workers' compensation and tort claims. *Id*.

> The *Jackson* court held that the plan's denial was arbitrary and capricious, explaining:
>
> This provision is designed to exclude the payment of benefits for any condition arising out of, or in connection with, any work-related injury or illness. There is simply nothing in the record that shows the broken screws were related to the automobile accident. Nor is there any evidence that the third surgery was the result of the worsening of a condition brought on by the automobile accident.
>
> The Administrator relies solely on the fact that the two screws which ultimately broke and necessitated the third surgery were placed in Jackson's neck during the second surgery. It can not, and does not, argue that the breaking of the screws was caused by the automobile accident or that the injury Jackson sustained during the accident resulted in the screws breaking. Nor does it dispute Jackson' statement that the breaking of the screws was a totally unexpected event.

*Id.* at 890. Because "the third surgery was necessitated by the broken screws—a severable or distinct condition from the actual physical trauma caused by the automobile accident. There is no causal relationship between the accident and the broken screws." *Id.* at 891.

The rationale in *Jackson* is squarely on point here. The Plan denied Sadowski's claims because charges were "[d]irectly related to implant placed 2013 and included w/MVA Settlement." (PSOF ¶ 59; AR0328 (emphasis added)). Just like in *Jackson*, there is no support in the record (much less rational support) to satisfy the Plan's burden of showing Sadowski incurred the expenses because of the 2013 car accident. The only evidence is that she incurred the expenses because of a separate intervening incident: her fall down the stairs 28 months after the car accident. Thus, as in *Jackson*, the Plan's denials here should be overturned.

## IV.    CONCLUSION

For the reasons set forth above, Sadowski respectfully requests the Court grant her motion for summary judgment.

15

Respectfully Submitted,

/s/ Michael Bartolic

| | |
|---|---|
| Michael Bartolic | Adam Harrison Garner |
| Roberts Bartolic LLP | The Garner Firm, Ltd. |
| 208 S. LaSalle Street, Suite 1420 | 1515 Market Street, Suite 1200 |
| Chicago, IL 60604 | Philadelphia, PA 19102 |
| Phone: (312) 635-1600 | Phone: (215) 645-5955 |
| mbartolic@robertsbartolic.com | adam@garnerltd.com |

**CERTIFICATE OF SERVICE**

  The undersigned, an attorney, hereby certifies that on August 31, 2017, the foregoing was served via the Court's ECF filing system upon filing of this document:

Stephen J. Rosenblat
Patrick N. Ryan
Baum Sigman Auerbach & Newman, Ltd.
200 West Adams Street, Suite 2200
Chicago, IL 60606
srosenblat@baumsigman.com
pryan@baumsigman.com

                /s/ Michael Bartolic