IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMANDA SADOWSKI,

              Plaintiff,

    v.

TUCKPOINTERS LOCAL 52
HEALTH & WELFARE TRUST,

              Defendant.

Case No. 16 C 11014

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Amanda Sadowski ("Sadowski") brings this action against Defendant Tuckpointers Local 52 Health & Welfare Trust (the "Fund") pursuant to § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C. § 1001 *et seq.*, alleging wrongful denial of medical benefits under the terms of her plan. Before the Court are Cross Motions for Summary Judgment [ECF Nos. 15, 24]. For the reasons stated herein, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

## I.  FACTUAL BACKGROUND

Sadowski brings this case under ERISA seeking payment for medical claims involving the removal of her spinal cord stimulator. Before discussing the claims at issue, the Court reviews her relevant medical history.

## A. Sadowski's Medical History

About two years prior to the medical claims at issue here, Sadowski (about 27-years-old at the time) was seriously injured in a car accident when her vehicle was struck and pushed into a guardrail on April 30, 2013 (the "Car Accident"). (Def.'s Resp. to Pl.'s 56.1(a)(3) Statement, ECF No. 26 ("Def.'s 56.1 Resp.") ¶¶ 1, 8.) Prior to the Car Accident, Sadowski was diagnosed with Complex Regional Pain Syndrome ("CRPS") due to suffering from chronic pain during her teenage years, but she had been asymptomatic since age 18 or 19. (Pl.'s Resp. to Def.'s 56.1(b) Statement of Add'l Facts, ECF No. 29 ("Pl.'s 56.1 Resp.") ¶¶ 6-7; Def.'s 56.1 Resp. ¶¶ 7, 9.) Along with other serious injuries, the Car Accident caused an occurrence of CRPS in the lower right part of her body. (*Id.*) After various treatments were ineffective, she underwent surgery, based on medical advice, to implant a spinal cord stimulator to treat the CRPS in the fall of 2013. (Def.'s 56.1 Resp. ¶¶ 13-14; Pl.'s 56.1 Resp. ¶ 8.) Her condition significantly improved after the implant of the spinal cord stimulator. (Def.'s 56.1 Resp. ¶ 14.) The Fund paid for all of the medical expenses associated with the Car Accident, including the implantation of the spinal cord stimulator. (Pl.'s 56.1 Resp. ¶ 9.)

## B.  Previous Lawsuit and Settlement

Sadowski, through her attorney, brought a personal injury lawsuit against third parties responsible for the Car Accident, which apparently resulted in a settlement. (*See,* Def.'s 56.1 Resp. ¶¶ 15-21.)   The Fund and Sadowski agreed to settle the Fund's reimbursement lien for the medical bills paid by the Fund resulting from the Car Accident. (*Id.*)

## C.  Relevant Portions of the Plan

The Plan governing Sadowski's benefits contains provisions addressing the Fund's rights to reimbursement for medical expenses it paid in the event of third-party settlement or recovery:

**Section 12.3    Settlement or Recovery**

> In the event of any recovery by judgment or settlement against the responsible party or parties, the reasonable cost of collection including attorney's fees shall first be deducted.   The Fund's subrogation interests, to the full extent of benefits paid or due as a result of the occurrence causing the injury or illness, shall next be deducted.   The Fund's subrogation interest will extend to all amounts recovered irrespective of how they are denominated in the settlement of judgment.   The remainder or balance of any recovery shall then be paid to the Eligible Participant or Dependent.

(Plan Document (the "Plan"), Ex. A to Compl., ECF No. 1, § 12.3.)   Relevant here, the Plan also provides for future medical expenses as follows:

**Section 12.3    Settlement or Recovery**

[. . .]

Once a settlement is reached, additional bills cannot
be submitted with respect to the same injury.

The Plan also has a summary plan description; however, the
summary plan is silent about the exclusion of future medical
expenses. (Pl.'s 56.1(a)(3) Statement, ECF No. 16 ("Pl.'s 56.1")
¶ 79; Administrative Record ("AR") at 1016.)  Additionally, the
Plan provides discretionary authority to the Plan Administrator
in Section 13.1(a):

(2) Discretionary Authority of Plan Administrator and
Designees

In carrying out their respective responsibilities
under the Plan, the Fund Administrator, and other Plan
fiduciaries and individuals to whom responsibility for
the administration of the Plan has been delegated,
have discretionary authority to interpret the terms of
the Plan and to interpret any facts relevant to the
determination, and to determine eligibility and
entitlement to Plan Benefits in accordance with the
terms of the Plan. Any interpretation or
determination made under that discretionary authority
will be given full force and effect, unless it can be
shown that the interpretation or determination was
arbitrary and capricious.

(*See* Plan, § 13.1(a); Pl.'s 56.1 Resp. ¶ 1; AR at 922.)

### D.  Sadowski's Medical Claims

With this relevant history in mind, the Court turns to the
medical claims at issue that have arose approximately two years
after the Car Accident.  On August 23, 2015, Sadowski slipped

and fell down the stairs in her home, injuring her left buttock. (Def.'s 56.1 Resp. ¶ 23.) The extent of her injury is disputed; Plaintiff contends that the fall left an "open wound," but the Fund disputes this characterization, pointing to journal entries stating that it resulted in a "nice scratch." (Pl.'s 56.1 ¶ 23; Def.'s 56.1 Resp. ¶ 23.) According to contemporaneous journal entries, Sadowski used Neosporin on the cut and bandaged it regularly over the course of the following weeks. (Def.'s 56.1 Resp. ¶¶ 23, 25-34.) The cut did not heal and worsened over time. (Pl.'s 56.1 ¶¶ 23, 25-34, 36-41; Def.'s 56.1 Resp. ¶¶ 23, 25-34, 36-41.) Sadowski did not see a doctor or receive any paid medical services until September 23, 2015, when she saw Dr. Lubenow who informed her that the spinal cord stimulator must be removed to prevent the risk of infection spreading to her spinal cord. (Def.'s 56.1(b) Statement of Add'l Facts, ECF No. 27 ("Def.'s 56.1") ¶ 10; Pl.'s 56.1 Resp. ¶ 10; Pl.'s 56.1 ¶ 42; Def.'s 56.1 Resp. ¶ 42.)

On September 28, 2015, Dr. Lubenow surgically removed the spinal cord stimulator. (Def.'s 56.1 Resp. ¶ 45). Dr. Lubenow's operative report indicates that the surgery was necessary due to an "infected pulse generator battery, left buttock[,]" "cellulitis, left buttock[,]" and "complex regional pain syndrome, lower extremities." (Pl.'s 56.1 Resp. ¶¶ 11-12; AR at

330.) It also notes, without any reference to a fall down the stairs, that "[a]pproximately a month ago" Ms. Sadowski "began noticing swelling over the battery pocket." (*Id.*) Sadowski suffered seizure-like symptoms after surgery, resulting in her admittance to Rush University Medical Center's emergency department and treatment in the Intensive Care Unit for four days. (Def.'s 56.1 Resp. ¶¶ 46, 49.) The Intensive Care Unit's History and Physical reflects that Sadowski's husband reported that "[t]wo weeks prior to the procedure, . . . p[atien]t had low grade fevers to the 99-100s, draining and pain in the area where the battery was, and possibly minor trauma to the area prior to the onset of fevers and pain." (Def.'s 56.1 Resp. ¶ 48; AR at 349.) Sadowski was discharged on October 2, 2015. (Def.'s 56.1 Resp. ¶ 49.)

### E. Medical Claim Determination

The removal of the spinal cord stimulator and subsequent emergency room treatment resulted in medical bills of approximately $73,000 that were submitted to the Fund for payment (the "Claims"). (Def.'s 56.1 Resp. ¶ 50.) Her medical providers submitted these charges to the Plan for payment. (*Id.*) The Fund denied payment for all of the charges related to the removal of her spinal cord stimulator and subsequent hospitalization. (Pl.'s 56.1 ¶ 55; Def.'s 56.1 Resp. ¶ 55.) The

Fund notified Sadowski of the denial of her medical claims by issuing numerous Explanations of Benefits ("EOBs"). (*Id.*) Relevant here, the EOBs included the following explanation for the denial: "No benefits released – services related to closed third party liability file" and "No further plan benefits for related illness/injury due to previous injury for which settlement was obtained." (Def.'s 56.1 Resp. ¶¶ 55-56; AR at 427-43 (alteration in original omitted).) The parties do not dispute that Amanda Sadowski is a covered beneficiary under the Plan. (Def.'s 56.1 Resp. ¶ 1.)

In response to the denial, Sadowski submitted a letter from her treating physician, Dr. Lubenow dated October 29, 2015, who also performed the removal surgery, to clarify the cause of the infection. (Def.'s 56.1 Resp. ¶ 58.) The letter states:

> Then, approximately 2–3 months ago, she fell at home, injuring the left buttock, causing an injury to the buttock, which then developed as an infection and cellulitis in the left buttock. This involved the pulse generator battery and, as such, the spinal cord stimulating system had to be explanted. The spinal cord stimulating system was explanted on September 28, 2015. This explant involved removal of the epidural electrodes as well as the pulse generator battery.

(*Id.*) The Plan reviewed the letter but did not change its assessment that the Claims were "[d]irectly related to the implant placed in 2013," and thus not covered by the Plan. (Def.'s 56.1 Resp. ¶ 59.)

## F. Administrative Appeal

On April 25, 2016, Sadowski appealed the Plan's denial of her medical claims and provided supporting documentation. (Def.'s 56.1 Resp. ¶ 60.) The Fund sought an independent medical review of her claims through the Medical Review Institute of America. (Pl.'s 56.1 Resp. ¶¶ 13, 15.) In its submission to the Medical Review Institute of America, the Fund wrote that "the claimant indicates she had a fall down the stairs that caused the battery pack infection," noted in uppercase text. (*Id.*) Dr. Kittelberger reviewed Ms. Sadowski's claims. (Pl.'s 56.1 Resp. ¶¶ 14, 16.)

## G. Dr. Kittelberger's Opinion

In his report, Dr. Kittelberger reviewed all of the records and answered two of the three questions submitted by the Fund. (Pl.'s 56.1 Resp. ¶¶ 16-18.) Due to the Fund's heavy reliance on Dr. Kittelberger's opinion in its appeal determination, his medical review answers are recited in full:

> 1) Was the surgery and related complications on 9/23/2015 related to the implant device placed on 9/27/13?
>
> Answer: Yes, The patient developed complex regional pain syndrome (CRPS) resulting from a motor vehicle accident (MVA) on 4/20/13. The spinal cord stimulator (SCS) was implanted specifically to treat the patient's pain that developed due to her CRPS. The patient fell at home in the late summer/early fall and developed an infection and cellulitis in the left buttock overlying the SCS generator, which spread to

the generator pocket, necessitating explantation of
the SCS. This was an injury directly related to the
treatment (the SCS) of the patient's chronic pain
stemming from the MVA. Therefore, the complications
from the explantation of the SCS and the subsequent
admission to Rush University are related to the
implanted SCS placed on 9/27/13 and the MVA on
4/20/13.

2) Would the surgery and hospital claims from 9/23/15
to 12/2/15 be included in future medical expenses
related to the subrogation claims for the MVA on
4/20/13?

This question was not answered-considered legal and
out of scope of clinical review.

3) Would a fall change the fact that the infected
battery pack was related to the 4/20/13 MVA? (when it
was put in)

Answer: No, The SCS was implanted on 9/27/13 to treat
the patient's pain which was specifically caused by
the MVA on 4/20/13. Had the patient not had an
implanted SCS at the time of her fall at home, an
infected buttock SCS generator pocket would not have
developed; no explantation of a SCS and subsequent
complications would have occurred.

(Pl.'s 56.1 Resp. ¶¶ 17-18, 20.)

### H. Appeal Determination

A Health Appeal Summary, which included the above answers

of Dr. Kittelberger, was prepared in advance of the Fund's

Trustees' consideration of Sadowski's appeal. (Def.'s 56.1 Resp.

¶¶ 69-70, 74.) The Trustees denied the appeal and the Fund

issued a final internal adverse benefit determination, which

concluded that "complications from the explantation of the

spinal cord stimulator (SCS) and subsequent admission to Rush

University are related to the implanted SCS placed on 9/27/13 and the motor vehicle accident (MVA) on 4/20/13." (Pl.'s 56.1 Resp. ¶ 20.) The denial letter cites to Section 12.3 of the Plan excluding charges for the "same injury" and states that Sadowski's personal injury attorney was warned that the Plan would pay no benefits for "injuries attributed to" the Car Accident after settlement. (*Id.*) The denial explains that Sadowski "developed an infection of the implant/battery pack and on September 28, 2015 went to the Ambulatory Surgical center at Rush for removal of the Stimulator unit. . . . Because the charges were directly related to the implant (covered by a settled third party claim) [*sic*] The Claims associated with the removal of the implant and subsequent hospitalization, were denied according to section 12.3 of the plan." (*Id.*) The denial relies heavily on Dr. Kittelberger's medical review, concluding that the injuries were "related." (*Id.*) Notably, the denial references the fact that "Mrs. Sadowski's attorney indicates there was a fall down the stairs which caused the infection," but it does not address Dr. Lubenow's letter, statements at the hospital, or Sadowski's journal entries. (Pl.'s 56.1 ¶ 77; Def.'s 56.1 Resp. ¶ 77; Pl.'s 56.1 Resp. ¶¶ 19-20.) However, it does include those materials in a list of documents considered as part of the appeal. (*Id.*)

On December 1, 2016, Sadowski filed this lawsuit pursuant to 29 U.S.C. § 1132(a)(1)(B), alleging that the Fund wrongfully denied her medical benefits. (*See,* Compl., ECF No. 1.)

## II.  STANDARD OF REVIEW

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See,* FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the Court "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Edwards v. Briggs & Stratton Ret. Plan,* 639 F.3d 355, 359 (7th Cir. 2011) (quoting *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir. 1998)).

### B.  Standard of Review under ERISA

"A court reviews a plan administrator's denial of benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits." *Hackett v. Xerox Corp. Long-Term Disability Income Plan,* 315 F.3d 771, 773 (7th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). Where the plan grants discretionary authority to the administrator, the decision is reviewed under the arbitrary and capricious standard. *Id.* Here, as the Plan

grants discretion to the Fund Administrator, the Court applies an arbitrary and capricious standard. (*See,* Plan, § 13.1(a); Def. ¶ 1; Pl.'s Fact Resp. ¶ 1.)

Under the arbitrary-and-capricious standard—which, at least for ERISA purposes, is synonymous with abuse of discretion—this Court will "uphold the Plan's decision 'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Edwards,* 639 F.3d at 360 (quoting *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 461 (7th Cir. 2001)). "However, review under the deferential arbitrary and capricious standard is not a rubber stamp, and deference need not be abject." *Id.* (quoting *Hackett,* 315 F.3d at 774) (internal quotations omitted). An administrator's determination may be arbitrary and capricious if it is inconsistent with the "structure of the plan or sheer common sense." *Gallo v. Amoco Corp.,* 102 F.3d 918, 922 (7th Cir. 1996).

## III.  ANALYSIS

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to

protect contractually defined benefits." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830 (2003) (quoting *Firestone,* 489 U.S. at 113) (internal quotations and citations omitted). ERISA plans must be in writing. 29 U.S.C. § 1102(a)(1). The plan terms must be communicated to participants through an easily understood "summary plan description," as well as a "summary of any material modification" to the plan. *Id.* § 1022(a). These documents are "given primary effect and strictly enforced and plan administrators must adhere to 'the bright-line requirement to follow plan documents in distributing benefits.'" *Young v. Verizon's Bell Atl. Cash Balance Plan,* 615 F.3d 808, 818 (7th Cir. 2010) (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 302 (2009)). Where administrators "controvert the plain meaning of [an ERISA] plan, their actions are arbitrary and capricious." *Swaback v. Am. Info. Techs. Corp.,* 103 F.3d 535, 540 & 540 n. 9 (7th Cir. 1996) (collecting cases). "Though complex in design, ERISA maintains the basic goal of 'protecting employees' justified expectations of receiving the benefits their employers promise them.'" *Young,* 615 F.3d at 819 (quoting *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 743 (2004)).

The question before the Court is whether the Fund's denial of Sadowski's Claims under Section 12.3 of the Plan was arbitrary and capricious. The Fund found that "[t]he complications from the explantation of the spinal cord stimulator (SCS) and subsequent admission to Rush University [were] related to the implanted SCS placed on 9/27/13 and the motor vehicle accident (MVA) on 4/20/13." (Def.'s 56.1 ¶ 20; Pl.'s 56.1 Resp. ¶ 20.) This case is not a difficult one, even under a deferential standard of review. It is unclear whether the Fund's denial of benefits was based on (1) its interpretation of the Plan language that the medical expenses at issue were "with respect to the same injury" because the Claims involved the spinal cord stimulator, or (2) its factual conclusion that the infection was not caused by Sadowski's fall down the stairs, but rather by the Car Accident. Under either theory, Sadowski prevails.

Turning first to the Fund's interpretation of Section 12.3, the Court finds that broadly interpreting "same injury" to include injuries caused by a distinct, independent event is unreasonable. Section 12.3 of the Plan provides that "[o]nce a settlement is reached, additional bills cannot be submitted with respect to the same injury." Because the Plan is "governed by ERISA, federal common law principles of contract interpretation

apply." *Sellers v. Zurich Am. Ins. Co.,* 627 F.3d 627, 632 (7th Cir. 2010). "Those principles require that Plan terms be interpreted in 'an ordinary and popular sense, as they would be understood by a person of average intelligence and experience.'" *Id.* (quoting *Cannon v. Wittek Cos. Intern.,* 60 F.3d 1282, 1284 (7th Cir. 1995)) (alterations omitted). The term "same" is defined as "[n]ot numerically different from an object indicated or implied; identical." *Same,* Oxford English Dictionary (2d ed. 2017). The term "injury" is defined in this context as "[h]urt or loss caused to or sustained by a person or thing; harm, detriment, damage." *Injury,* Oxford English Dictionary (2d ed. 2017). The ordinary and popular meaning of "same" is a narrow one, being synonymous with identical, and therefore Section 12.3's "same injury" language is fairly read as excluding bills with respect to an "identical" "hurt or loss sustained by" Sadowski in the Car Accident. *Id.*

"[A] person of average intelligence and experience" would reasonably interpret Section 12.3 as excluding medical expenses caused by the Car Accident; however, "a person of average intelligence and experience" would not reasonably believe that an unrelated, subsequent event resulting in medical bills would be excluded by the Plan as "the same injury" purely because it affected a medical device that had been implanted due to the Car

Accident. *Sellers,* 627 F.3d at 632. Although this Court will uphold an administrator's decision if it "is based on a reasonable explanation of relevant plan documents," an interpretation that contradicts the plain meaning of a Plan's language does not meet this threshold. *Edwards,* 639 F.3d at 360 (quoting *Hess,* 274 F.3d at 461); *see also, Swaback,* 103 F.3d at 540 & 540 n. 9 (collecting cases).

Here, the Fund's interpretation that the injuries caused by the infection are the "same injury" as those caused by the Car Accident merely because the latter injury affected the spinal cord implant, is broader than the plain language allows. The Plan's "same injury" language necessarily excludes a separate, independent injury from the exclusion provision. This remains true even though the Car Accident necessitated the implant of her spinal cord stimulator in the first instance. Injuries resulting from two separate, independent events are not reasonably read as the "same." *See, Schane v. Int'l Bhd. of Teamsters Union Local,* 760 F.3d 585, 590 (7th Cir. 2014) (rejecting trustee's interpretation of plan where it is inconsistent with the language). Additionally, since the spinal cord stimulator was implanted to treat the occurrence of CRPS caused by the Car Accident, its removal is a clear reversal of the treatment recommended after the Car Accident. (*See,* Pl.'s

56.1 ¶ 8.) If the injuries were the same, there is no explanation for a complete treatment reversal.

*Jackson v. Wal-Mart Stores, Inc. Associates' Health & Welfare Plan* is analogous. *See, Jackson,* 92 F.Supp.2d 882 (W.D. Ark. 2000). In *Jackson,* the plaintiff was injured in a work-related car accident, and as a result, he required cervical screws to be implanted in his neck. *Id.* at 883-84. He settled a worker's compensation claim and a third-party claim related to the car accident. *Id.* Approximately two years later, the plaintiff's cervical screws broke and required removal. *Id.* at 884. The administrator denied the plaintiff's claim for benefits based on the plan's workers' compensation exclusion. *Id.* Although it was undisputed that the screws were originally placed in the plaintiff's neck due to the work-related injury, the court held that the plan's denial was arbitrary and capricious, reasoning that there was "no causal relationship between the accident and the broken screws" because the broken screws were caused by "a severable or distinct condition from the actual physical trauma caused by the automobile accident." *Id.* at 891. In other words, the car accident did not *cause* the screws to break.

Although *Jackson* is not binding, this Court finds its reasoning persuasive. The plain meaning of Section 12.3's "same

injury" language is to exclude medical expenses causally related
to the Car Accident. The broad reading advanced by the
defendant in *Jackson* and advanced by the Plan here is
unreasonable and fails to "protect[] employees' justified
expectations." *Young,* 615 F.3d at 819 (quoting *Cent. Laborers'
Pension Fund,* 541 U.S. at 743). Although it is true that
Sadowski never would have had a spinal cord stimulator had she
not been in the Car Accident, "no causal relationship" exists
between the infection and the Car Accident because her fall down
the stairs and subsequent infection is "a severable or distinct
condition from the actual physical trauma caused by the
automobile accident." *Jackson,* 92 F.Supp.2d at 891. Reliance
on *Jackson* is further buttressed by the fact that the language
of the Plan here is far narrower ("same injury") than that in
the plan before the *Jackson* court ("any condition arising out
of, or in connection with"), and yet *Jackson* still found a
causal relationship wanting. *Id.*

The Fund attempts to distinguish *Jackson* by arguing that
the court there found "nothing in the record that shows the
broken screws were related to the automobile accident," whereas
Dr. Kittelberger found here that Ms. Sadowski's infection was
"related" to her motor vehicle accident. (*See,* Def.'s Mem. for
Summ. J. at 13.) Though *Jackson* does use the term "related," it

is clear that *Jackson* requires a more direct relationship than Dr. Kittelberger found. Dr. Kittelberger concluded that the Claims were "related" to the Car Accident, but his analysis, on its face, relied solely on but-for causation, reasoning that "[h]ad the patient not had an implanted [spinal cord stimulator] at the time of her fall at home, an infected buttock [spinal cord stimulator] generator pocket would not have developed; no explantation of a [spinal cord stimulator] and subsequent complications would have occurred." (Def Add'l ¶ 20.) Under Dr. Kittelberger's reasoning, any subsequent injury affecting the spinal cord stimulator, even if caused by an entirely separate injury or even another, separate car accident, would be "related." This logic was rejected in *Jackson*. *See, Jackson,* 92 F.Supp.2d at 891.

Were the Court to find the Plan's interpretation reasonable, it would sanction refusal of coverage for any subsequent, independent injury that affected Sadowski's spinal cord stimulator. This reads "same injury" far too broadly. Now, it would be another matter entirely if Dr. Kittelberger found that the timeline between the fall and the infection was medically implausible and, accordingly, that the fall was unlikely to have caused the infection or that medical evidence suggested the infection would have arisen regardless of a fall.

On the contrary, nothing of the sort characterizes Dr. Kittelberger's analysis. Finally, Dr. Kittelberger's review gives little support to the Fund's interpretation of "same injury" because he did not find that Sadowski's Claims involved the "same injury" as the Car Accident, but rather answered only whether they were "related," a broader inquiry by definition. (Def.'s 56.1 ¶ 20.)

The Fund points to *Vanegas v. Bd. of Trustees of Health & Welfare Fund,* No. CIV. JFM 07-52, 2007 WL 4180548 (D. Md. Nov. 20, 2007), arguing that it is more analogous than *Jackson*. However, the plan administrators in *Vanegas* relied on a medical opinion that the treatments at issue resulted from the original injury, concluding that the proximate cause (not but-for cause) of the infections was the original treatment. *See, id.* at 19-20. This is not the case here. Furthermore, the plan language in *Vanegas* used broader terms ("in connection with") than the relevant Plan language here. *See, id.* at *14. *Jackson* provides a better reference point because it involves an independent event affecting a medical device implanted due to a previous injury, and yet finds no causal link to support a denial of benefits under the Plan. *See, Jackson,* 92 F.Supp.2d at 891.

Accordingly, the Fund acted arbitrarily and capriciously by interpreting the Plan's "same injury" language to exclude a

subsequent, independent injury that affected Sadowski's spinal cord stimulator because that interpretation contradicts the plain meaning of a plan as understood by "a person of average intelligence and experience." *Sellers,* 627 F.3d at 632 (quotation omitted); *see also, Swaback,* 103 F.3d at 540 & 540 n. 9 (collecting cases).

However, denial of Sadowski's Claims may still be upheld if it was not based on interpretation of the Plan's "same injury" language but the Fund's factual conclusion that the infection was caused by the Car Accident, and not Sadowski's fall down the stairs. (*See,* Def.'s Mem. Summ. J. at 8.) The Fund's denial will be upheld if it "offer[s] a reasoned explanation, based on the evidence, for a particular outcome." *Edwards,* 639 F.3d at 360 (quoting *Hess,* 274 F.3d at 461). The Court will not substitute its own judgment for that of the Fund. *See, id.* However, "ERISA requires plan administrators to . . . address any reliable evidence of eligibility put forward by the claimant." *Love v. Nat'l City Corp. Welfare Benefits Plan,* 574 F.3d 392, 396 (7th Cir. 2009) (citations omitted). A determination is arbitrary and capricious if "the administrator fails to provide specific reasons for rejecting evidence and denying the claim." *Black v. Long Term Disability Ins.,* 582 F.3d 738, 745 (7th Cir. 2009) (citations omitted).

Here, the evidentiary submissions offer the Plan few footholds. Notably, it is undisputed that Sadowski fell down the stairs about a month prior to the infection. (Pl.'s 56.1 ¶ 23; Def.'s 56.1 Resp. ¶ 23.) The parties dispute the severity of the injury from her fall, but do not dispute that she fell. (*Id.*) Sadowski relies on three additional pieces of evidence. First, Sadowski submitted a letter from her treating physician (the same physician who performed the removal surgery), stating that the "infection and cellulitis in [her] left buttock" was caused by "a [fall] at home." (Pl.'s 56.1 ¶ 58; Def.'s 56.1 Resp. ¶ 58.) Second, Sadowski provided multiple journal entries supporting her fall down the stairs and the subsequent worsening infection. (Pl.'s 56.1 ¶¶ 23, 25-34, 36-41; Def.'s 56.1 Resp. ¶¶ 23, 25-34, 36-41.) And third, the medical records from Rush University's Intensive Care Unit note the cause of the infection as "possibly being due to minor trauma to the area" based on Sadowski's husband's report to medical personnel. (Pl.'s 56.1 ¶ 48; Def.'s 56.1 Resp. ¶ 48.) Furthermore, the timeline supports that the infection was caused by her fall down the stairs. Nothing in the record suggests that Sadowski experienced complications with her spinal cord stimulator after implantation, approximately two years prior, until this incident

in close proximity to her undisputed fall down the stairs. (Pl.'s 56.1 ¶¶ 13-14; Def.'s 56.1 Resp. ¶¶ 13-14.)

The Fund need not accept this evidence, but it must "provide specific reasons for rejecting evidence," especially in the absence of contrary evidence. *See, Black,* 582 F.3d at 745 (citations omitted). The Fund argues it discharged its duty by considering all the evidence during the appeal, but a mere statement that "all relevant medical evidence had been considered" without addressing contrary evidence or the statements of the treating physician is insufficient. *See, Love,* 574 F.3d at 396 (citation omitted).

In the face of this evidentiary record, the Fund argues that the evidence "does not mandate a conclusion that the fall was the sole cause of the infection." (*See,* Def.'s Mem. for Summ. J. at 11.) That may be so, but regardless, the Fund "must articulate a rational connection between the facts found, the issue to be decided, and the choice made. *Dabertin v. HCR Manor Care, Inc.,* 373 F.3d 822, 828 (7th Cir. 2004) (citing *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, 1109 (7th Cir.1998)).

The Fund must "articulate a rational connection" between the evidence and its determination that the Car Accident caused the infection rather than her fall. The Fund has failed to do this. The Fund is free to come to its own conclusion based on

other evidence, but here its conclusion is undermined by several admitted facts. The Fund "admits that [Sadowski] slipped and fell down the stairs" approximately a month before the surgery. (Def.'s Resp. ¶ 23.) The Fund concedes that Sadowski's journal entries reflect that she sustained a cut after the fall and a worsening of the infection, although it generally denies that the entries are material. (Def.'s Resp. ¶¶ 23, 25-34, 36-44.) The Fund "admits that Ms. Sadowski's husband told an admitting physician about 'possibly minor trauma to the area prior to the onset of fevers and pain'" during Sadowski's admission to Rush University's Intensive Care Unit, as recorded in contemporaneous medical records. (Def.'s Resp. ¶ 48.) The Fund points out that the pre- and post- operative reports do not mention a fall down the stairs, but neither do they mention *any* cause of the infection; they merely state that the infection began about a month prior to when the patient was seen. (Def.'s 56.1 ¶¶ 11-12; Pl.'s 56.1 Resp. ¶¶ 11-12; AR at 330.) Furthermore, the author of the operative report was Sadowski's treating physician who later wrote a letter stating that her fall caused the infection. (Pl.'s 56.1 ¶ 58; Def.'s 56.1 Resp. ¶ 58.)

In opposition to this record evidence, the Fund primarily relies on the independent medical review of Dr. Kittelberger. This reliance goes too far. First, Dr. Kittelberger appears to

credit the fact that the infection was caused by a fall down the stairs, stating in his medical review: "The patient fell at home in the late summer/early fall and developed an infection and cellulitis in the left buttock overlying the [spinal cord stimulator] generator, which spread to the generator pocket, necessitating explantation of the [spinal cord stimulator]." (Pl.'s 56.1 Resp. ¶ 20.) Given Dr. Kittelberger's position on these facts, the Fund cannot rely on his opinion to support a factual finding that the fall did not cause the infection or that the Car Accident was the primary cause. Furthermore, Dr. Kittelberger applied a mere but-for causation analysis to come to his conclusion. (Def.'s 56.1 ¶ 20; Pl.'s 56.1 Resp. ¶ 20.) On the face of his report, the expert's reasoning does not rely on medical evidence. (*Id.*) Dr. Kittelberger's analysis fails to articulate a "rational connection" except for a rather obvious but-for causation rationale that the spinal cord stimulator never would have been explanted if Sadowski did not have one in the first place. (*Id.*) This is insufficient. *See, Jackson,* 92 F.Supp.2d at 891. Thus, Dr. Kittelberger's analysis (and the Fund's corresponding reliance on his analysis) is insufficient to show a "rational connection" between the facts here and the Fund's denial.

The Fund's conclusion that the infection was caused by the Car Accident several years prior – given the evidence provided by Sadowski, the lack of evidence to the contrary, and the insufficient reasoning underpinning Dr. Kittelberger's report – fails to "offer a reasoned explanation, based on the evidence, for a particular outcome." *Edwards,* 639 F.3d at 360 (quoting *Hess*, 274 F.3d at 461). After considering all of the evidence before the Fund's Trustees, the Fund's decision that Sadowski's Claims were caused by the Car Accident was arbitrary and capricious. *See, id.*

*       *       *

In sum, the Fund acted arbitrarily and capriciously by interpreting the Plan's "same injury" language to include medical expenses caused by a separate, independent injury and/or by failing to provide a rational basis for rejecting Sadowski's factual evidence concerning the cause of the infection.

Public policy supports this Court's conclusion. The purpose of an exclusion like Section 12.3 is to prevent insurance companies from bearing a burden that should be borne by the third-party responsible for the medical expenses at issue and to ensure that medical expenses paid by the Fund, but later recovered through settlement or suit, are reimbursed. However, the exclusion overshadows its purpose if it is interpreted to

exclude medical expenses that could not be recovered from a responsible third party. It is unlikely that future injuries to Sadowski's spinal cord stimulator caused by a separate, independent injury would reach the threshold of "reasonably certain[ty]" required for an award of damages against the car accident tortfeasor. *Diaz v. Legat Architects, Inc.,* 920 N.E.2d 582, 609 (Ill. App. Ct. 1st Dist. 2009) (citation omitted). The interpretation of Section 12.3 put forward by the Plan leaves a gap in insurance coverage, where a plaintiff could not recover certain future medical expenses from a responsible third-party but would also not receive coverage from the Plan for them. An interpretation such as this violates the plain language and purpose of the Plan provision and leaves a perilous gap in coverage.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Summary Judgment [ECF No. 15] is granted. Defendant's Motion for Summary Judgment [ECF No. 24] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: December 20, 2017

- 27 -